**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

TIMOTHY J. BEALL,
Plaintiff,

v.

EVERETT J. PRESCOTT, INC., et al.,
Defendants.

**CIVIL ACTION**
**NO. 25-40124-MRG**

**REPORT AND RECOMMENDATION**

**September 2, 2026**

Hennessy, M.J.

By Order of Reference dated May 19, 2026, pursuant to 28 U.S.C. § 636(b)(1)(B), (Docket #30), this matter was referred to me for a report and recommendation on the motion to dismiss filed by Defendants Steven Silver, Melinda Caterine, Rachel Plourde, and Littler Mendelson, P.C. (collectively "Littler Defendants") (Docket #11).[1] Pro se Plaintiff Timothy J. Beall has filed no opposition to the motion. This matter is now ripe for adjudication. For the reasons that follow, I recommend that the motion to dismiss be allowed.

## I. BACKGROUND

Beall, a Massachusetts resident, was employed by Everett J. Prescott, Inc. ("EJP") in its Shrewsbury, Massachusetts division as an inside sales representative. (Docket #1-1 at ¶¶ 1, 9). In

---

[1] In their motion to dismiss, the Littler Defendants state that Caterine and Silver are Littler Shareholders and Plourde is a Littler Attorney Practice Coordinator. (Docket #12 at 1). Plourde is not an attorney but instead is responsible for ECF filings. (Id. at 4 n.2).

November of 2024, Beall disclosed to EJP a court-ordered absence tied to a custody matter. (Id. at ¶ 10). On November 6, 2024, Beall was terminated due to "attendance." (Id. at ¶ 11).

At the time of his termination, Beall was in active recovery from alcoholism. (Id. at ¶ 12). Beall alleges that he requested time off while employed by EJP under the Massachusetts Paid Family and Medical Leave ("PFML") program, was denied benefits, and was never paid earned commissions. (Id. at ¶ 13). Beall further alleges that EJP submitted false information to the Department of Unemployment Assistance, resulting in the wrongful denial of unemployment benefits. (Id. at ¶ 14). Beall asserts that, after he requested his commission check and explained his position to EJP's Human Resources Department, Paul Van Savage, EJP's Human Resources Director, filed a false police report in Beall's hometown by using the name "Scott Prescott," instead of the true name of EJP's CEO, Steven Prescott. (Id. at ¶ 15). The police report was filed during a sensitive custody battle, and Beall alleges that it caused him enduring reputational and emotional harm. (Id. at ¶ 16).

On March 3, 2025, in response to his complaints and request for relief, EJP through its legal counsel Caterine and Silver of Littler Mendelson, filed an allegedly retaliatory civil action against Beall in the United States District Court for the District of Maine, two-hundred miles from his home. (Id. at ¶¶ 4, 17; Docket #13-1).[2] The verified complaint asserted claims of defamation per se, tortious interference with advantageous economic relationships, and intentional infliction of emotional distress. (Docket #13-1). The verified complaint requested that the court issue a temporary restraining order and a preliminary injunction. (Id.). On March 10, 2025, EJP filed an

[2] The court takes judicial notice of the court filings in Everett J. Prescott, Inc. v. Timothy J. Beall, No 1:25-cv-00071-JAW (D. Me.), contained in the attachments to Dockets #13 and #19. The court does so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." See Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)); see also Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

amended verified complaint adding Van Savage as a plaintiff. (Docket #13-2). Beall, claiming that he was never properly served in the action, states that he was unaware of these filings until after a default had been entered against him. (Docket #1-1 at ¶ 18). After receiving a Right to Sue letter from the Massachusetts Attorney General and the EEOC, Beall successfully vacated the default judgment. (Id. at ¶ 19).

Beall filed the instant case in the Massachusetts Superior Court for Worcester County on August 6, 2025. (Dockets #1, 1-1). Defendants removed the case to federal court on August 19, 2025. (Docket #1). Beall generally alleges that the Defendants participated in a "sustained campaign of retaliation, civil rights violations, and coordinated suppression of protected speech." (Id. at p. 2). Beall asserts that EJP and/or its agents engaged a third party, Defendant Wayne Black, who contacted Beall and referred him to both the FBI and local law enforcement. (Id. at ¶ 21). Beall alleges that he has been subject to third-party intimidation, having received a voicemail from an individual identifying herself as an FBI agent within hours of a settlement outreach by Beall, and then being contacted by Shrewsbury police officer Finnacom the following day. (Id. at ¶¶ 22-23). Officer Finnacom disclosed that Black had reached out to the Shrewsbury Police Department directly. (Id. at ¶ 23). Beall alleges that the actions of all Defendants reflect patterns of "racketeering-like conduct" including filing of false police reports, using sealed court records for leverage, impersonation of federal agents, intimidation of a pro se litigant, and abuse of civil process over state lines. (Id. at ¶ 29).

## II. STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). "Under Rule 12(b)(6),

the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)). There lies an exception to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).

To survive a motion to dismiss, a plaintiff must "state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Despite this generous standard, "Rule 12(b)(6) is not entirely a toothless tiger . . . [t]he threshold for stating a claim may be low, but it is real." Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989) (quotation omitted). The complaint must therefore "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988); see DM Research, Inc. v. Coll. Of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (explaining that the complaint must "allege a factual predicate concrete enough to warrant further proceedings").

Although the complaint need not provide "detailed factual allegations," Twombly, 550 U.S. at 555, it must "amplify a claim with some factual allegations . . . to render the claim plausible," Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Though most motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are "premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). "As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defenses are definitely ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004).

## III. ANALYSIS

The Littler Defendants argue that the complaint against them should be dismissed in its entirety because they are shielded from liability by the litigation privilege. (Docket #12 at 7-8). The Littler Defendants argue that all of the challenged conduct giving rise to Beall's claims against them are absolutely privileged because it was carried out by Attorneys Silver and Caterine, with the assistance of their Attorney Practice Coordinator and law firm, on behalf of their clients, EJP and Van Savage, in the course of litigation. (Id. at 7).

In Massachusetts, the litigation privilege "shields an attorney from civil liability to nonclients for statements made in the course of litigation." Bartle v. Berry, 80 Mass. App. Ct. 372,

378 (2011). Massachusetts has adopted the formulation of the privilege set forth in the Restatement (Second) of Torts, which provides:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Bassichis v. Flores, 490 Mass. 143, 150 (2022) (quoting Restatement (Second) of Torts § 586 (1977)). "The litigation privilege promotes zealous advocacy by allowing attorneys 'complete freedom of expression and candor in communications in their efforts to secure justice for their clients.'" Id. at 151 (quoting Sriberg v. Raymond, 370 Mass. 105, 108 (1976)). The privilege also "furthers the efficient administration of justice by preempting frivolous actions brought by disgruntled individuals in the wake of unfavorable judgments." Id. at 152.

The scope of the privilege is broad. Although originally developed to protect lawyers from defamation suits, the reach of the privilege has extended to "civil liability generally." Id. at 151 (quoting Bartle, 80 Mass. App. Ct. at 378) (stating that the litigation privilege applies to bar claims of defamation, intentional infliction of emotional distress, abuse of process, negligence, invasion of privacy, violations of Mass. Gen. laws ch. 93A, and violations of the Massachusetts Civil Rights Act); see Fisher v. Lint, 69 Mass. App. Ct. 360, 360-61 (2007) (applying the privilege to claims of civil conspiracy and intentional interference with advantageous relationships). The courts have also recognized that the privilege applies with equal force to an attorney's actions during the course of a judicial proceeding as it does to an attorney's communications. Bassichis, 490 Mass. at 158. Furthermore, "the privilege applies regardless of malice, bad faith, or any nefarious motives on the part of the lawyer so long as the conduct complained of has some relation to the litigation." Id. at 150 (quoting Anenson, Absolute Immunity From Civil Liability: Lessons for Litigation Lawyers, 31 Pepp. L. Rev. 915, 918 (2004)). While the breadth of the privilege's scope comes "at the cost

of potentially protecting an individual attorney who misrepresents material facts to further the attorney's client's interest," the courts have "accept[ed] this broad protection as necessary to encourage zealous advocacy."[3] Id. at 156.

Whether or not the absolute litigation privilege applies "is determined on a case-by-case basis, after a fact specific analysis, with a proper consideration of the balance between a plaintiff's right to seek legal redress for injuries suffered and the public policy supporting the application of such a strong protection from the burdens of litigation." Fisher v. Lint, 69 Mass. App. Ct. 360, 365-66 (2007). Here, Beall alleges that, on behalf of their clients, the Littler Defendants filed a retaliatory action against Beall 200 miles from Beall's residence. (Docket #1-1 at ¶¶ 17, 28). Beall further alleges that the actions of all Defendants reflect patterns of "racketeering-like conduct." (Id. at ¶ 29). All the allegations against the Littler Defendants relate to the litigation in Maine. Even if the Littler Defendants did file the Maine action in bad faith, the litigation privilege bars Beall's claims against them. See Bassichis, 490 Mass. at 157 (finding that litigation privilege barred action against attorney where judgment creditors alleged lawyer for wife in a divorce proceeding had fraudulently orchestrated a divorce judgment to transfer husband's assets to wife and thereby defraud husband's judgment creditors). Accordingly, the claims against the Littler Defendants are subject to dismissal.

[3] In Bassichis v. Flores, the Massachusetts Supreme Judicial Court stressed that remedies other than a cause of action for damages can be imposed to discourage and sanction attorney misconduct. Bassichis v. Flores, 490 Mass. 143, 153 (2022). The court noted that a trial judge has the inherent authority to sanction an attorney for his or her misconduct in the courtroom or to hold the attorney in contempt of court and, separately, that the Board of Bar Overseers may institute disciplinary proceedings against an attorney for a violation of the rules of professional responsibility. Id.

## IV. CONCLUSION

For the foregoing reasons, I RECOMMEND that the motion to dismiss (docket #11) be ALLOWED and that the complaint against Defendants Silver, Caterine, Plourde, and Littler Mendelson, P.C. be dismissed with prejudice.[4]

/s/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

[4] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).